4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
James BAKER, Defendant/Appellant.
 No. 92-3113.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 12, 1993.*
Decided Aug. 19, 1993.
Rehearing Denied Oct. 22, 1993.
 
 Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 We affirm James Baker's conviction for assaulting an employee of the United States Postal Service and his sentence of 115 months' imprisonment.
 
 A. BACKGROUND
 
 2
 On December 18, 1991, Louis Eberly was robbed at knife point as he delivered the mail to the Taft Homes in Peoria. Eberly initially described his attacker as a black male, about 5'9" tall and weighing 130 to 140 pounds. A month after the attack, the Peoria Police Department showed Eberly a group of photographs, including Baker's. Eberly refused to make a positive identification without a line-up.
 
 
 3
 At a subsequent line-up, Eberly immediately identified Baker as the assailant. Baker later claimed that the line up had been suggestive and moved to suppress its results, but the district court denied the motion after a hearing.
 
 
 4
 Both Eberly and Baker testified at Baker's jury trial. Eberly told the jury essentially the same story as he had told the police, again identifying Baker as his attacker. Several witnesses corroborated Eberly's testimony, including two people with whom Baker had discussed the assault and a witness who had seen Baker at the Taft Homes on the day of the crime. Baker denied any involvement in the crime, claiming that he had been cashing public aid checks with his sisters at the time of the incident. Later testimony revealed, however, that Baker's sisters had cashed the checks the day before the assault.
 
 
 5
 After his conviction, Baker appealed with the assistance of counsel. Counsel raises only one issue in his appellate brief: the reliability of the identification. Baker mentions several other issues in a supplemental brief, which he has filed pro se.
 
 B. ANALYSIS
 1. Waived Issues
 
 6
 Baker raises several issues in his supplemental brief raises several issues that we decline to address today. He challenges, for example, the legality of his arrest and his career offender sentencing enhancement. We consider these claims waived because Baker never raised them in the district court and because he cannot show that the district court committed plain error by failing to mention them sua sponte. See United States v. Rivero, 993 F.2d 620 (7th Cir.1993).
 
 2. Ineffective Assistance of Counsel
 
 7
 Baker argues that counsel should have challenged the line-up as a product of an illegal arrest. We cannot review this claim because Baker never introduced evidence at trial attacking the legality of his arrest. Since this court cannot take evidence, it may consider ineffective assistance claims on direct appeal only if the claims rely entirely upon evidence in the district court record. United States v. Limehouse, 950 F.2d 501, 503 (7th Cir.1991), cert. denied, 112 S.Ct. 1962 (1992); United States v. Taglia, 922 F.2d 413, 417 (7th Cir.1991).
 
 3. Identification Procedures
 
 8
 Finally, Baker attacks the reliability of Eberly's in-trial identification. Baker, first, criticizes Eberly's ambivalence about the assailant's description. Although Eberly initially described the attacker as a black man weighing between 130-140 pounds and possessing no scars or other distinguishing features, he identified Baker, who weighs 230 pounds and possesses numerous scars and tatoos, as the attacker at trial. Eberly was also unable to pick Baker's picture from a group of photographs.
 
 
 9
 Because Eberly identified Baker both at trial and in a line-up, we analyze Baker's claims under the standard set forth in Simmons v. United States, 390 U.S. 377, 384 (1968):
 
 
 10
 convictions based on eyewitness identification at trial following a pretrial identification ... will be set aside on that ground only if the [previous] identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 
 
 11
 This court will find a substantial likelihood of misidentification only if (1) the initial identification procedure was unduly suggestive and (2) the totality of the circumstances show that the identification was unreliable. See United States v. Briggs, 700 F.2d 408, 412 (7th Cir.), cert. denied, 461 U.S. 110 (1983); see also United States ex rel. Kosik v. Napoli, 814 F.2d 1151, 1155 (7th Cir.1987).
 
 
 12
 Baker has not shown that the police conducted a suggestive line-up, as required by part one of the two-part test. His attorney never mentions the issue, although nearly every case he cites involves suggestive pre-trial procedures. See Neil v. Biggers, 409 U.S. 188, 199 (1972); Dispensa v. Lynaugh, 847 F.2d 211, 220 (5th Cir.1988); Kosik, 814 F.2d at 1155; United States v. Goodman, 797 F.2d 468, 469, 470 (7th Cir.1986). Baker discusses the issue briefly in his pro se brief, contending simply that "because the lineup in the present case was conducted in secrecy there is serious difficulty in depicting what transpired at the lineup."
 
 
 13
 Although we agree that the line-up was conducted in relative secrecy, this court can easily reject Baker's claim of suggestiveness. The details of the line-up were revealed during the hearing on Baker's motion to suppress. According to the transcript from that hearing, Baker stood in the line-up with three other similarly-dressed men of his race and age. Two of these men were near Baker's height. Despite these similarities, Eberly immediately identified Baker as the assailant.
 
 
 14
 Baker's attorney also raises a second challenge to the in-court identification. He complains that, at the time Eberly made the identification, Baker and the district court judge were the only black men in the courtroom. As support for his challenge, counsel cites the Second Circuit's United States v. Archibald, 734 F.2d 938, 941 (2d Cir.1984), but he ignores this circuit's opinion in United States v. Davies, 768 F.2d 893, 903 (7th Cir.), cert. denied, 474 U.S. 1008 (1985). In Davies, the defendant challenged an in-court identification as suggestive, arguing that he was the only person in the courtroom fitting the description of the assailant. This court rejected the defendant's claim, holding that "a defendant does not have a constitutional right to an in-court line-up identification of the defendant." We noted that "[g]enerally, the question of the suggestiveness or credibility of the in-court identification is to be resolved ultimately by the jury after the defendant has had an opportunity to test the accuracy of an identification through cross-examination."
 
 
 15
 Finding no evidence of an erroneous identification, we AFFIRM the judgment of the district court.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs